**MUN SU PARK, ESQ.**
**LAW OFFICES OF PARK AND ASSOCIATES**
P.O. Box 503665, Saipan, MP 96950
Tel:    (670) 233-1255
Fax:    (671) 647-1211

lawyerpark@hotmail.com
Attorney for Plaintiffs

FILED
Clerk
District Court

FEB - 8 2018

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

SHOMON ULLAH MONSHI,
SYFUL ISLAM,
NASIR UDDIN,
MOHAMMED M. BILLAH,
ADDULLAH AL MAMUN,
ABDULLAH AL MAHAMUD,
MD RABI ULLAH,
MAKSUDUR RAHMAN,
AMIR RASOOL,
HEMAYET HOSSEN,
MD SHAHIDUL ISLAM,
BILLAL HOSSEN SARKAR,
KHIRUL BASHER,
MD SOLAIMAN MUNSHI

Plaintiffs,

-vs-

**MD NURUL ISLAM BHUIYAN,**
**dba ISLAND PROTECTION SERVICE,**

Defendant.

CIVIL ACTION NO. 18-_____

CV 18 - 00002

**COMPLAINT**

COMES NOW the Plaintiffs, SHOMON ULLAH MONSHI *et. al.*, (hereinafter also referred to as "Plaintiffs"), by and through their undersigned counsel and sues the Defendant, **MD NURUL ISLAM BHUIYAN, dba ISLAND**

**PROTECTION SERVICE**, (hereinafter also referred to as "Defendant"), and states as follows:

# I
## NATURE OF THE ACTION

1.     This is an action by Plaintiffs against their former employer for violation of the minimum wage and overtime provision pursuant to the Fair Labor Standards Act ("FLSA"), minimum wage laws of the Commonwealth of Northern Mariana Islands (CNMI), and breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and fraud.   Plaintiffs seek damages and a reasonable attorney's fee.

# II
## JURISDICTION AND VENUE

2.     This action arises in part under 29 U.S.C. § 201, *et. seq.* of the FLSA. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331 for Plaintiff's claims being brought under FLSA, 29 U.S.C. § 201 *et. seq.*

3.     This Court also has jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).   Plaintiff requests supplemental jurisdiction be extended over these related claims.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), because the Defendant conducts business and can be found in the island of Saipan and the cause of action set forth herein has arisen and occurred in part in the District of Northern Mariana Islands. Venue is also proper under 28 U.S.C. §1132(e)(2) because Defendant has substantial business contacts within Saipan, including its corporate headquarters, which is located in Saipan, CNMI.

### III
### PARTIES

5.      Plaintiffs are fourteen (14) the nationals of Bangladesh and were brought to Saipan to work for Defendant's business of security services agency.

6.      Defendant is a resident of the CNMI with its principal place of business located in Saipan, CNMI.

7.      Defendant on information and belief, also owns and operates businesses of house renting, barracks, and rent car on Saipan.

8.      Defendant all relevant times, was an employer of Plaintiffs as defined by the FLSA and CNMI minimum wage law.  Defendant has been engaged in the business of security services agent to his patrons including Joeten Super Store, Joeten Susupe, Joeten Hafa Adai, First Hawaiian Bank Oleai, Docomo Saipan, Docomo Tinian, Docomo Rota,  World Resort, Koblerville Souther High School, Hanam Market, et cetra.

## IV
## STATEMENT OF FACTS

9.    Defendant's gross annual sales made or business done has been $500,000 or greater per year at all relevant times.

10.    Defendant compensated Plaintiffs for their work with an hourly basis.

11.    As compensation, Plaintiffs only received wages with $3.50 on hourly basis, and with $4.00 on hourly basis after May 2017. As such, at all times material, Each of Plaintiffs was being paid less than the Federal and CNMI minimum wages.

12.    The CNMI hourly minimum wage during the times relevant to this action was: after September 30, 2014: $6.05 after September 30, 2016: $6.55 after September 30, 2017: $7.05

13.    Plaintiffs as security guards regularly worked shifts of ten (10) or more hours per day.

14.    Plaintiffs worked overtime, for which they were not compensated.

15.    Defendant had a common policy of not paying Plaintiffs at a rate of one and one-half (1.5) times their regular rate of pay for the overtime hours they worked as required by the FLSA.

16.    In calculating Plaintiffs' overtime pay, Defendant only paid their regular hourly rate (i.e., straight time rate), rather than the legally required one and one-half times their regular rate of pay.

17.    Defendant required Plaintiffs to pay for their immigration petition filing fees in violation of federal immigration laws and associated regulations

18.    In August, 2017, the CNMI Department of Labor Administrative Hearing Office had sanctioned Defendant for numerous regulatory violations.

19.    During the period between December 2017 and January 2018, the CNMI Department of Labor investigated Defendant for violations of wage and hour laws.

# V
# **CAUSES OF ACTION**

## **FIRST CAUSE OF ACTION**
## **(Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*)**

20.    Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b)(s)(1).

21.    At all relevant times, Defendant paid Plaintiffs a set wage for an hour which was less than required minimum wage.

22.    The FLSA requires covered employers like Defendant to pay non-exempt employees like Plaintiffs no less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207.

23.     Plaintiffs regularly worked more than forty (40) hours per week for Defendant, but Defendant did not properly compensate them for all of their overtime hours as required by the FLSA.

24.     Defendant did not and have not made a good-faith effort to comply with the FLSA as it relates to the compensation of minimum wage and overtime.

25.     For example, Plaintiff Shomon Ullah Monshi ("Monshi")'s biweekly work hours ranged from 114.25 hours to 306.5 hours, producing an unpaid balance ranging from $366.55 to $1,244 in terms of his biweekly pay. During the biweekly workweeks of April 6, 2016 through April 16, 2016, Defendant paid Plaintiff Monshi for a total of 114.25 regular hours at his hourly rate of $3.75 per hour.   For more than one (1) year or from April 6, 2016 until October 21, 2017, Defendant owes Plaintiff Monshi an unpaid wages and overtime compensation of $21,593. 23. Attached hereto is EXHIBIT "1-A" representing the detailed information on the said computation of unpaid wages and overtime compensation.

26.     Plaintiff Syful Islam's  biweekly work hours ranged from 139 hours to 259.5 hours producing an unpaid balance ranging from $319 to $1,123 in terms of his biweekly pay.  For more than two (2) years or from January 18, 2015 until October 25, 2017, Defendant owes Plaintiff Islam an unpaid wages including overtime of $19,963.00.   Attached hereto is EXHIBIT "1-B" representing the detailed information on the said computation of unpaid wages and overtime.

27.     Plaintiff Nasir Uddin's biweekly work hours ranged from 223 hours to 273 hours producing an unpaid balance ranging from $871 to $1,235 in terms of his biweekly pay.  For more than four (4) years or from October 5, 2014 until October 25, 2017, Defendant owes Plaintiff Uddin an unpaid wages including overtime of $29,863.00.  Attached hereto is EXHIBIT "1-C" representing the detailed information on the said computation of unpaid wages and overtime.

28.     Plaintiff Mohammed Masum Billah's biweekly work hours ranged from 120 hours to 270 hours producing an unpaid balance ranging from $276 to $908 in terms of his biweekly pay.  For more than two (2) years or from June 23, 2015 until October 21, 2017, Defendant owes Plaintiff Billah an unpaid wages including overtime of $15,191.00.   Attached hereto is EXHIBIT "1-D" representing the detailed information on the said computation of unpaid wages and overtime.

29.     Plaintiff Abdullah Al Mamun's biweekly work hours ranged from 98.5 hours to 200 hours producing an unpaid balance ranging from $283 to $880 in terms of his biweekly pay.  For more than two (2) years or from January 25, 2015 until October 23, 2017, Defendant owes Plaintiff Mamun an unpaid wages including overtime of $18,473.00.   Attached hereto is EXHIBIT "1-E" representing the detailed information on the said computation of unpaid wages and overtime.

30.    Plaintiff Abdullah Al Mahamud's biweekly work hours ranged from 111 hours to 290 hours producing an unpaid balance ranging from $370 to $1,487 in terms of his biweekly pay.  For more than one (1) year or from April 7, 2016 until October 22, 2017, Defendant owes Plaintiff Mahamud an unpaid wages including overtime of $19,328.00.  Attached hereto is EXHIBIT "1-F" representing the detailed information on the said computation of unpaid wages and overtime.

31.    Plaintiff MD Rabi Ullah's biweekly work hours ranged from 204 hours to 254 hours producing an unpaid balance ranging from $603 to $876 in terms of his biweekly pay.  For more than one (1) year or from May 21, 2016 until October 21, 2017, Defendant owes Plaintiff Ullah an unpaid wages including overtime of $11,148.00.   Attached hereto is EXHIBIT "1-G" representing the detailed information on the said computation of unpaid wages and overtime.

32.    Plaintiff Maksudur Rahman's biweekly work hours ranged from 168 hours to 310 hours producing an unpaid balance ranging from $410 to $1,089 in terms of his biweekly pay.  For more than one (1) year or from May 21, 2016 until September 30, 2017, Defendant owes Plaintiff Rahman an unpaid wages including overtime of $14,038.00.   Attached hereto is EXHIBIT "1-H" representing the detailed information on the said computation of unpaid wages and overtime.

33.    Plaintiff Amir Rasool's biweekly work hours ranged from 88 hours to 112 hours producing an unpaid balance ranging from $72.66 to $217.92 in terms of

his biweekly pay.  For more than two (2) years or from April 11, 2015 until June 17, 2017, Defendant owes Plaintiff Rasool an unpaid wages including overtime of $9,271.70.    Attached hereto is EXHIBIT "1-I" representing the detailed information on the said computation of unpaid wages and overtime.

34.    Plaintiff  Hemayet Hossen's biweekly work hours ranged from 124 hours to 303 hours producing an unpaid balance ranging from $895 to $1,176 in terms of his biweekly pay.  For more than one (1) year or from May 20, 2016 until October 19, 2017, Defendant owes Plaintiff an unpaid wages including overtime of $13,274.00.    Attached hereto is EXHIBIT "1-J" representing the detailed information on the said computation of unpaid wages and overtime.

35.    Plaintiff  MD Shahidul Islam's biweekly work hours ranged from 160 hours to 294 hours producing an unpaid balance ranging from $385 to $1,262 in terms of his biweekly pay.  For more than one (1) year or from May 20, 2016 until October 25, 2017, Defendant owes Plaintiff an unpaid wages including overtime of $15,207.00.    Attached hereto is EXHIBIT "1-K" representing the detailed information on the said computation of unpaid wages and overtime.

36.    Plaintiff  Billal Hossen Sarkar's biweekly work hours ranged from 80 hours to 129.5 hours. For more than one (1) year or from April 7, 2016 until October 25, 2017, Defendant owes Plaintiff an unpaid wages including overtime of $10,618.00.    Attached hereto is EXHIBIT "1-L" representing the detailed

information on the said computation of unpaid wages and overtime.

37.     Plaintiff  Khirul Basher's monthly work hours ranged from 257 hours to 329 hours.  For more than one (1) year or from September 6, 2015 until October 12, 2017, Defendant owes Plaintiff an unpaid wages including overtime of $13,183.00.    Attached hereto is EXHIBIT "1-M" representing the detailed information on the said computation of unpaid wages and overtime.

38.     Plaintiff  MD Solaiman Munshi's weekly work hours ranged from 0 hours to 94.5 hours.  For more than one (1) year or from February 5, 2015 until October 23, 2017, Defendant owes Plaintiff an unpaid wages including overtime of $3,355.00.    Attached hereto is EXHIBIT "1-N" representing the detailed information on the said computation of unpaid wages and overtime.

39.     Defendant willfully operated under a common scheme to deprive Plaintiffs of proper wages and overtime compensation by paying them less than what is required under federal and CNMI laws.

40.     Defendant knew that Plaintiffs worked overtime hours without receiving proper overtime pay because Defendant required Plaintiffs to record and submit records of their work hours.

41.     Defendant was aware, or should have been aware, of his unlawful payment practices and recklessly chose to disregard the consequences of his actions.

42.    Plaintiffs allege  pursuant to the FLSA, 29 U.S.C. §216(b) that they are entitled to unpaid minimum wages and overtime wages for all hours worked in excess of forty for each workweek, liquidated damages, costs, and attorneys' fees.

43.    Defendant  knew  Plaintiffs  worked  overtime  without  proper compensation, and he willfully failed and refused to pay Plaintiffs wages at the required overtime rates. See 29 U.S.C. § 255.

44.    As a direct and proximate result of these unlawful practices of not paying minimum wages and overtime compensation, Plaintiffs suffered wage loss and are therefore entitled to recover unpaid minimum wages and overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (*Breach of Contract*)

45.    Plaintiff incorporates herein by reference paragraphs 1-44 above.

46.    This is a cause of action against Defendant.

47.    A binding employment contract executed between Plaintiffs and Defendant constitutes contract enforceable by its terms against Defendant.

48.    Under  the  Employment  Contract,  "<u>Employer  guarantees  that employee shall be paid the prevailing minimum wage in the CNMI during the term</u>

of his employment, subject to any future wage increases as may be mandated by Federal or CNMI laws."  Attached as **EXHIBITS "2"** and **"3"** are copies of the "Employment Contract."

49.     Defendant breached the Employment Contract by refusing and failing to pay minimum wage in the CNMI.

50.     As a result of its breach of the contract with Plaintiffs, Defendant is also liable to the Plaintiffs for all reasonably foreseeable damages resulting from its breach in an amount to be proven at trial plus pre-judgment and post-judgment interest thereon.

51.     Wherefore, Plaintiff prays for the relief as set forth herein.

### THIRD CAUSE OF ACTION
*(Unjust Enrichment/Recovery of Recruitment Processing Fees)*

52.     Plaintiff incorporates herein by reference paragraphs 1-51 above.

53.     This is a cause of action against Defendant.

54.     Defendant fraudulently promised that he would file petition for Plaintiffs' green card after they came to Saipan, CNMI, USA.

55.     In reliance on Defendant's promises to perform his contractual duties under the Employment Contract and to file immigrant petitions for green cards of Plaintiffs, each of Plaintiffs paid considerable amount of so-called "Recruitment

Processing fees" to Defendant. Attached as **EXHIBIT "4"** is a summary of recruitment processing fees paid to Defendant with signatures of each Plaintiff.

56.     Prior to their arrival at Saipan, Plaintiffs paid the recruitment processing fees to Defendant in the total amount of **ONE HUNDRED THIRTY THOUSAND TWO HUNDRED SIXTY TWO DOLLARS ($ 130,262.00) plus air fare**.

57.     Defendant is unreasonably withholding and refusing to return to Plaintiffs the recruitment processing fees despite his failures to keep his promises.

58.     Defendant has been enriched by Plaintiffs' payment of recruitment processing fees.

59.     Each of Plaintiffs thus suffered damages, and is entitled to the return of all of recruitment processing fees.

60.     The above-mentioned conduct of Defendant was willful, wanton, malicious, oppressive, and with the intentional and improper purpose of causing damage, and therefore also justify an additional award of punitive and exemplary damages in favor of Plaintiffs.

## FOURTH CAUSE OF ACTION
### *(Unjust Enrichment/Recovery of Immigration Filing Fees)*

61.     Plaintiff incorporates herein by reference paragraphs 1-60 above.

62.     This is a cause of action against Defendant.

63.    Defendant charged Plaintiffs with immigration filing fees intended to pay for the processing of CW1 petitions to USCIS.

64.    According to the US immigration law and regulations, the filing fees should be paid by Defendant who is a Petitioner or employer in this instant case.

65.    No employer is allowed to deduct USCIS filing fees from an employee's salary.

66.    Defendant has been unjustly enriched by the value of Plaintiffs' payment of immigration filing fees.

## FIFTH CAUSE OF ACTION
### *(Unjust Enrichment/Nonpayment of Withholding Tax)*

67.    Plaintiff incorporates herein by reference paragraphs 1-66 above.

68.    This is a cause of action against Defendant.

69.    Defendant also violated the CNMI and IRS Tax Code when it did not remit the withholding taxes intended to the Plaintiffs.

70.    Defendant has unlawfully refused to pay withholding taxes to CNMI and federal government authorities.

71.    It would be unjust for Defendant to retain such withholdings without paying taxes for each of Plaintiffs.

## SIFTH CAUSE OF ACTION
### *(Fraud Based on Forgery of Immigration Documents)*

72.    Plaintiff incorporates herein by reference paragraphs 1-71 above.

73.    This is a cause of action against Defendant.

74.    Defendant committed violation constituting immigration fraud when it altered the names of the beneficiaries in Approval Notices to lie to his patrons about Plaintiffs' immigration status.

75.    Defendant made fake documents by the modification of existing documents with the intent to deceive his patrons about Plaintiffs' immigration status.   Hereto attached are **EXHIBITS "5"** and **"6"**, copies of the forged immigration documents.

76.    As a direct and proximate result of Defendant's unlawful forgery, Plaintiffs have suffered, and will continue to suffer, irreparable injury, emotional distress, mental anguish, physiological disorders, emotional distress, humiliation, monetary damages, and other compensable damages.

### SEVENTH CAUSE OF ACTION
### (*Retaliation and Terrorizing*)

77.    Plaintiff incorporates herein by reference paragraphs 1-76 above.

78.    This is a cause of action against Defendant.

79.    Throughout their employment by Defendant, the CNMI Department of Labor Administrative Hearing Office had sanctioned Defendant for numerous

regulatory violations. Hereto attached are **EXHIBIT "7", a** copy of Saipan Tribune.

80.    Plaintiffs expressed their grievances about Defendant's violations of US and CNMI labor laws.    Due to their expression, Plaintiff suffered discriminatory treatments by Defendant including physical abuse, insulting comments and disparate treatment concerning terms and conditions of work.

81.    When Plaintiffs expressed their concerns, Defendant retaliated against those Plaintiffs. Defendant actions included, but were not limited to, reducing these Plaintiffs' hours, withholding wages, threatening reductions in pay, harassing them and making comments intended to intimidate them from proceeding with this lawsuit.

82.    Defendant's retaliation caused Plaintiffs significant economic, physical and emotional harm.

83.    After Plaintiffs filed labor claims at the CNMI Department of Labor in 2017, Defendant has threatened Plaintiffs and their family members in Bangladesh.

84.    This is an action under federal and CNMI laws to seek equitable relief for the numerous legal transgressions committed by Defendant and to prevent future illegal actions by Defendant.

85.     Due to Defendant' illegal retaliation and terrorizing, Plaintiffs are entitled to all appropriate relief, including, but not limited to enjoining Defendant from further threat, and emotional distress damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, pray for relief as follows:

a.  A finding in favor of Plaintiffs and declaring Defendant's conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA, CNMI labor law, associated regulations;

b.  Awarding Plaintiffs all compensatory damages under FLSA and CNMI labor law;

c.  A finding that Defendant's violations of the FLSA are willful;

d.  Awarding Plaintiffs liquidated damages;

e.  Awarding Plaintiffs pre-judgment and post-judgment interest;

f.  Awarding reasonable attorney's fees, costs, and expenses;

g.  Awarding punitive damages;

h.  Enjoining Defendant from knowingly creating false wage and hour records and from encouraging Plaintiffs and other employees to participate in the creation of these false records;

i.  Enjoining Defendant from threatening and terrorizing Plaintiffs and their family members in Bangladesh;

j.  Ordering that Defendants comply fully with all federal and CNMI wage and hour, and other employment laws and regulations;

k.  Enjoining Defendant from any act that may frustrate Plaintiffs' claims or recovery of damages

l.  Ordering such other and further relief that the Court deems just and proper.

Respectfully submitted this 8th day of February, 2018.


Law Offices of Park & Associates, LLC


Mun Su Park
CNMI Bar No.: F0456
Attorney for Plaintiffs